*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GERALD ARMOUR, RONALD LAMPHERE, as Personal Representative of the ESTATE OF ROBERT LAMPHERE, G&G ENTERPRISES, LLC, AILEEN JARRELL, MONROE WHITE, LARRY WILLARD, KATIE WILLARD, DAVID WYMAN, and NANCY WYMAN,

   Plaintiffs-Appellants,

and

KEVIN FANNIN, JAJAO, LLC, and TEJINDER SINGH,

   Plaintiffs,

v

KALAMAZOO COUNTY, MARY BALKEMA, in her individual and official capacity, and THOMAS L. WHITENER, in his individual and official capacity,

   Defendants-Appellees.

FOR PUBLICATION
July 15, 2026
11:02 AM

No. 375423
Kalamazoo Circuit Court
LC No. 2024-000122-CZ

Before: REDFORD, P.J., and WALLACE, and LIEVENSE, JJ.

REDFORD, P.J.

Before the Court is one of several recent cases related to tax-foreclosure sales of property by local units of government addressing the question of what happens with excess proceeds that result from these sales. In *Rafaeli v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020), our Supreme Court held that government retention under the General Property Tax Act, MCL 211.1 *et seq.*, (GPTA), of surplus proceeds beyond the tax liability owed as well as interest, penalties, and fees incurred to collect those taxes was a violation of the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2. Following *Rafaeli* to address these issues, our Legislature

-1-

amended the GPTA by passing 2020 Public Act 255 and 2020 Public Act 256, which was codified in MCL 211.78t.

In this matter, plaintiffs appeal the dismissal without prejudice of their complaint bringing 11 federal and state constitutional claims and other state law claims seeking recovery for surplus proceeds allegedly retained by Kalamazoo County through tax-delinquency foreclosures between 2013 and 2020 and other alleged damages. The defendant county served as the foreclosing governmental unit (FGU) under the GPTA in these proceedings. At the time, Michigan law authorized the FGU to retain proceeds from the sale in excess of what was owed in taxes, interests, penalties, and fees. As indicated above, this provision in the GPTA was declared a violation of the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2 in *Rafaeli*. We conclude that MCL 211.78t provides the exclusive state law mechanism for persons with claims like plaintiffs present here to recover surplus proceeds. See MCL 211.78t(11); *Hathon v State of Michigan*, ___ Mich ___, ___; 17 NW3d 686, 686-687 (2025). Both *Rafaeli* and MCL 211.78t apply retroactively, as determined by our Supreme Court in *Schafer v Kent Co*, 515 Mich 1, 29-41, 45-46; 29 NW3d 25 (2024).

Plaintiffs' complaint was dismissed because they did not first follow the mechanism provided in MCL 211.78t but, instead, sued defendants Kalamazoo County and its current and former treasurer in circuit court claiming that the retention of surplus proceeds violated their rights under the federal and state constitutions and other state law claims. During oral argument on June 2, 2026, plaintiffs' counsel represented to the Court that plaintiffs have now filed claims under MCL 211.78t to recover surplus proceeds or other relief. We take no position as to the validity of any constitutional or other claim that plaintiffs may raise in the context of the proceedings commenced under MCL 211.78t. For purposes of this appeal, we affirm the April 9, 2025 order of the Kalamazoo Circuit Court granting defendants' motion for summary disposition and dismissing plaintiffs' claims without prejudice because plaintiffs filed this complaint without first utilizing the mechanism provided in MCL 211.78t.

## I. FACTS AND PROCEDURAL BACKGROUND

Between 2013 and 2020, plaintiffs allegedly lost ownership of real property through foreclosure and tax-delinquency sales by the Kalamazoo County Treasurer as the FGU under the GPTA. At the time the sales occurred, Michigan law authorized FGUs to retain surplus proceeds from these sales. This portion of the GPTA was declared a violation of the Takings Clause of the Michigan Constitution, Const 1963, art 10, § 2 in *Rafaeli*, 505 Mich 429. Subsequently, our Legislature amended the GPTA by passing 2020 Public Act 255 and 2020 Public Act 256, thereby providing a process for plaintiffs to recover surplus proceeds as defined in the statute. See MCL 211.78t. In *Schafer*, 515 Mich at 13-14, 45-46, our Supreme Court held that both *Rafaeli* and MCL 211.78t apply retroactively and that the latter "creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds."

Plaintiffs' complaint was dismissed prior to discovery. They report tax-delinquency sales that occurred during the following respective years and resulted in the county recovering the following respective dollar amounts in excess of what is constitutionally permissible after *Rafaeli*: Amour (2014, $14,500), Fannin (2019, $11,150), Jerrell (2015, $17,664.16), Lamphere (2018,

-2-

$26,900), JAJAO, LLC (2018, $29,750), White (2019, $11,750), Willard (2014, $29,700), Wyman (2013, $41,300), and Singh (2020, $91,500).

The primary question here is whether plaintiffs were required to first follow the procedures in MCL 211.78t to recover their surplus proceeds before pursuing other relief. They opted out of this initially, filing their March 7, 2024 complaint more than three years after the Legislature enacted 2020 Public Act 255 and 2020 Public Act 256, which are now codified in MCL 211.78t. They sued Kalamazoo County as well as a current and former county treasurer in each person's official and personal capacity. The complaint includes 11 counts, consisting of six state-law claims: inverse condemnation, violation of Const 1963, art 10, § 2, unjust enrichment, conversion, statutory conversion, and "claim and delivery"; and five federal law claims: a Fifth Amendment takings claim via 42 USC 1983, a Fifth Amendment takings claim arising directly under the federal Constitution, an alleged violation of the Eighth Amendment for excessive fines, and two Fourteenth Amendment claims via 42 USC 1983 alleging violations of substantive and procedural due process, respectively. In their complaint, plaintiffs sought, among other things, additional compensation "to reach an amount equaling 125% of the property's fair market value if this Court determines that private property consisting of an individual's principal residence was taken for public use pursuant to Article X, Section 2 of the Michigan constitution."

On August 23, 2024, defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8).[1] Following oral argument, the Kalamazoo Circuit Court granted their motion on April 9, 2025, dismissing plaintiffs' federal and state claims. The trial court's reasoning was explained from the bench. In sum, the trial court found that neither federal nor state law authorized plaintiffs to recover the fair market value of their properties. It stated, in pertinent part:

> the *Rafaeli* Court expressly rejected the premise that . . . just compensation requires claimants to be awarded the fair market value of the properties so as to be put in as good a position as their properties would be . . . had the properties not been taken at all. Rather, just compensation requires . . . [the] foreclosing governmental unit to return only proceeds from the tax foreclosure sale in excess of the delinquency tax interest penalties and fees reasonably determined related to the foreclosure and sale of the property.

The trial court further recognized that the "retroactive effect of *Rafaeli* has also been noted" in *Schafer*.

With respect to the federal claims, the trial court recognized that "[t]he Federal Fifth Amendment protects no more than the over plus or surplus or excess proceeds that arise through tax foreclosure." The trial court cited precedent from both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit to support its decision, including *Tyler v Hennepin Co, Minn,* 598 US 631; 143 S Ct 1369; 215 L Ed 2d 564 (2023) and *Hall v Meisner*, 51 F4th 185 (CA 6, 2022). Moreover, the trial court found that the procedures for recovering the

---

[1] Defendants filed two motions for summary disposition, one of which sought dismissal of the state-law claims and the second sought dismissal of the federal law claims. The trial court granted summary disposition in a single order, dated April 9, 2025.

surplus proceeds under MCL 211.78t have been recognized as "constitutional, enforceable, and exclusive" by this Court as well. See *In re Muskegon Co Treasurer for Foreclosure*, 348 Mich App 678; 20 NW3d 337 (2023). The trial court further noted: "Therefore, plaintiff must seek their compensation through the procedure that's outlined in the statute, and they must exhaust any administrative remedy pursuant to the statute in order to seek any additional claims that have been brought forth here today."

On appeal, plaintiffs claim that the trial court erred in dismissing their claims without prejudice because they did not follow the procedures set forth in MCL 211.78t. Plaintiffs allege that their constitutional claims vested prior to the adoption of 2020 Public Act 256 and, also, that Congress "preempted any effort by the State of Michigan to add administrative conditions or other steps prior to pursuit of federally grounded claims." Finally, plaintiffs dispute that the Supreme Court's order in *Hathon*, ___ Mich at ___;17 NW3d at 686-687, is authoritative because it is only an order and additionally, the "central tenet" was whether the Court of Claims had jurisdiction over a class action, not whether MCL 211.78t provides the exclusive remedy for their constitutional claims.

Defendants assert that dismissal is appropriate on several grounds, including the appropriateness of requiring plaintiffs to comply with the procedures set forth in MCL 211.78t for seeking reimbursement of their surplus proceeds. Defendants cite *Harbor Watch Condo Ass'n v Emmet Co Treasurer*, 308 Mich App 380, 387-388; 863 NW2d 745 (2014), as an example of this Court recognizing that local authorities are bound by statutory requirements for distribution of public funds. They assert that it defies logic for plaintiffs to allege that their constitutional claims vested before the local authorities had legislative procedures to disburse surplus proceeds to former owners of tax-foreclosed properties.

With respect to the concern as to the statute of limitations, defendants assert that *Schafer* applied the six-year statute of limitations from the December 22, 2020 enactment of MCL 211.78t through the July 29, 2024 date of the *Schafer* opinion; therefore, plaintiff Singh had "full benefit of this tolling." And, with respect to the federal claims, plaintiffs have pointed to no federal case authorizing plaintiffs to avoid a statutory scheme that requires governmental authorities to repay the surplus proceeds owed. The issue in *Williams v Reed*, 604 US 168; 145 S Ct 465; 221 L Ed 2d 44 (2025), was that the scheme "effectively immunized" the state against federal charges to the delays in processing the plaintiff's claims. This is not the situation here because the Legislature enacted procedures through which an individual can recover surplus proceeds.

In addition, defendants also challenge plaintiffs' claims on the merits, asserting that the inverse condemnation claim is duplicative of the claim under the Takings Clause. They argue plaintiffs' conversion claim fails because there was no "wrongful" exercise of dominion over any property, and the claim-and-delivery theory fails because the property at issue is money, which is neither a "good" nor a "chattel" that may be subject to conversion. Defendants claim that a "direct" cause of action under the Fifth Amendment is not available, nor is a claim under 42 USC 1983 sustainable. They assert the Eighth Amendment claim applies only in the context of a criminal punishment, and our Supreme Court rejected a characterization of this type of claim as criminal forfeiture. Finally, defendants argue any substantive or procedural due-process claim necessarily fails because plaintiffs cannot demonstrate that the procedures set forth in MCL 211.78t are constitutionally infirm or inadequate given that plaintiffs had not even attempted them at the time

-4-

they filed the complaint in circuit court. Defendants claim immunity and preserve other defenses available to the extent factual development is required.

The parties' briefs addressed several arguments, including their respective positions on the merits of plaintiffs' constitutional claims.[2] Because we agree with the trial court that dismissal was appropriate for failure to first follow the procedures of MCL 211.78t, we need not address the merits of plaintiffs' constitutional and other claims or potential damages.

In deciding this case, we specifically hold that *Hathon*, ___ Mich at ___; 17 NW3d at 686-687, is binding authority, requiring plaintiffs to follow the statutory mechanism in MCL 211.78t if they want to recover surplus proceeds from a tax-delinquency foreclosure sales. For this reason, the April 9, 2025 order of the Kalamazoo Circuit Court is affirmed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo, considering the "entire record to determine whether defendant[s] [were] entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Questions of constitutional law, as well as matters involving statutory interpretation and retroactivity of amended statutes are also reviewed de novo. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

Defendants sought summary disposition under both MCR 2.116(C)(7) and MCR 2.116(C)(8). MCR 2.116(C)(7) authorizes summary disposition when, among other things, defendants are immune from plaintiff's claims as a matter of law. This Court reviews all pleadings and documentary evidence presented by the parties in the light most favorable to plaintiffs as the

---

[2] Following oral argument, both this Court and the United States Supreme Court issued published opinions that potentially impact plaintiffs' federal and state law claims in the MCL 211.78t proceedings. Specifically, this Court held that former property owners' inverse condemnation claims accrued at the time of the foreclosure sales generated surplus proceeds retained by the FGU. These plaintiffs' claims were, therefore, subject to a three-year limitations period in MCL 600.6452(1) and, ultimately, time-barred. *In re Petition of State Treasurer for Foreclosure of Unpaid Tax*, ___ Mich App ___; ___ NW3d ___ (2026) (Docket No. 376481). In addition, the United States Supreme Court determined that the federal Takings Clause and Excessive Fines Clause do not require recovery based on the fair market value of the real property sold at a tax-delinquency foreclosure sale and that recovery of any surplus funds up to the actual sale price constitutes "just compensation." *Pung v Isabella Co*, 609 US ___; ___ S Ct ___; ___ L Ed ___ (2026) (Case No. 25-96). Neither of these opinions addressed the issue before us in this case, i.e., whether plaintiffs must follow the mechanism provided in MCL 211.78t in order to recover whatever proceeds may be available to them as a result of the tax-delinquency foreclosure proceedings. However, nothing in this opinion should be read as prohibiting the trial court from requesting additional briefing or considering any argument the parties may raise as a result of these recent opinions in the context of the MCL 211.78t proceedings.

nonmoving parties. *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013); *Lavey v Mills*, 248 Mich App 244, 249-250; 639 NW2d 261 (2001). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

MCR 2.116(C)(8) provides for summary disposition when a party "has failed to state a claim on which relief can be granted." A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the claim on the pleadings alone." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013); see also MCR 2.116(G)(5). In analyzing a motion under this court rule, courts must accept as true all factual allegations in the complaint and only grant the motion "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

## B. MCL 211.78t PROVIDES AN EXCLUSIVE MECHANISM FOR ADJUDICATING CLAIMS TO RECOVER SURPLUS PROCEEDS

Our Supreme Court has described MCL 211.78t as "creat[ing] a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Schafer*, 515 Mich at 45. Specifically, MCL 211.78t authorizes a claimant to "submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under [MCL 211.78m]." MCL 211.78t(1). "For foreclosed property transferred or sold under [MCL 211.78m] before July 18, 2020, . . . the notice of intention must be submitted pursuant to [MCL 211.78t(6)]." MCL 211.78t(1)(b)(*ii*). Subsection (6) requires, among other things, that the claimant "notify the [FGU] using the form prescribed by the department of treasury" and submit it in the manner under MCL 211.78t(2) "by the March 31 at least 180 days after any qualified order." MCL 211.78t(6). By the following July, the FGU must respond with a "notice relating to the foreclosed property in the form and manner provided under [MCL 211.78t(3)]." MCL 211.78t(6). This notice must include the information identifying the parcel, any potential claimants, and relevant dollar amounts including the total amount of remaining proceeds to which a claimant may be entitled. MCL 211.78t(3).

"To claim any applicable remaining proceeds to which the claimant is entitled, the claimant must file a motion with the circuit court in the same proceeding in which a judgment of foreclosure was effective under [MCL 211.78k] by the following October 1." MCL 211.78t(6). The motion must be certified and include a sworn affidavit indicating the amount owed as well as specific information detailed by statute, including a sworn affidavit with the "specific basis for the claimant's asserted interest in some or all of the remaining proceeds." See MCL 211.78t(6)(a)-(*i*); MCL 211.78t(8). The FGU must respond and the circuit court shall set a hearing date and time for each property for which a notice of intention was filed. MCL 211.78t(9). At the hearing, the court shall "determine the relative priority and value of the interest of each claimant in the foreclosed property immediately before the foreclosure was effective." MCL 211.78t(9). The burden of proof is on each claimant to establish their "interest in any remaining proceeds," which is defined as:

> [T]he amount equal to the difference between the amount paid to the [FGU] for a property due to the sale or transfer of the property under [MCL 211.78m] and the sum of all of the following:

(*i*) The minimum bid under [MCL 211.78m].

(*ii*) All other fees and expenses incurred by the [FGU] pursuant to [MCL 211.78m] in connection with forfeiture, foreclosure, sale, maintenance, repair, and remediation of the property not included in the minimum bid.

(*iii*) A sale commission payable to the [FGU] equal to 5% of the amount paid to the [FGU] for the property. [MCL 211.78t(12)(b).]

Subsection (11) of MCL 211.78t describes this statute as "the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the law of this state." MCL 211.78t(11).

## C. PLAINTIFFS FORFEIT THEIR RIGHT TO RECOVER ANY SURPLUS PROCEEDS IF THEY DO NOT COMPLY WITH MCL 211.78t

The trial court's decision to dismiss plaintiffs' complaint because they failed to comply with this "exclusive mechanism" is supported by both federal and state precedent. The question is not, as plaintiffs suggest, whether the retention of surplus proceeds violated the state or federal constitutions, or whether they may have a constitutionally protected right that has accrued. *Rafaeli*, 505 Mich at 461-466, *Tyler*, 598 US at 639, and *Hall*, 51 F4th at 188, answered that question in the affirmative. However, in MCL 211.78t, the Legislature provided the mechanism that plaintiffs must follow if they wish to vindicate this right. While plaintiffs' counsel suggested the remedy available under MCL 211.78t may be insufficient, both state and federal courts have found it facially sufficient while leaving open the possibility that a plaintiff may be able to demonstrate it provided an insufficient remedy for them.[3] Such an argument is premature in the context of this case because plaintiffs failed to follow any procedures. The trial court dismissed plaintiffs' complaint because of their failure to comply with these requirements, and its decision is well-founded in state and federal court precedent.

## 1. MCL 211.78t APPLIES RETROACTIVELY AND IS THE EXCLUSIVE MECHANISM FOR VINDICATING THE RIGHTS RECOGNIZED IN *RAFAELI*

In *In re Muskegon Co Treasurer for Foreclosure*, 348 Mich App at 686, this Court affirmed dismissal of a complaint filed by the plaintiffs whose notices of intention under MCL 211.78t were denied for untimely filing.

In this published opinion, the Court stated, "our Legislature's own words could hardly be clearer: Section 78t 'is the *exclusive mechanism* for a claimant to claim and receive any applicable

---

[3] *Pung*, 609 US at ____; slip op at ____, involved federal constitutional claims and held that the surplus funds (the amount between the unpaid taxes and the actual sale price, not the fair market value) constituted "just compensation" for plaintiff's claims. While *Pung* arose in Michigan, the plaintiff there pursued a remedy in federal court and did not follow MCL 211.78t. That said, *Pung* suggests that if a plaintiff recovers the surplus funds under § 78t, then plaintiff would not also have a cognizable constitutional claim for additional damages. *Id*.

remaining proceeds under the laws of this state.' " *Id.* at 688, quoting MCL 211.78t(11). This Court explained that "[t]he specific language of MCL 211.78t indicates our Legislature's intent for the statute to serve as the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties and the satisfaction of their tax debt and related costs." *Id.* at 691. The procedures of MCL 211.78t "impose[] a reasonable, minimal burden on former owners to advise the FGU of their intent to exercise" their "constitutionally-protected right to proceeds remaining after the satisfaction of their tax debt and associated costs . . . ." *Id.* at 694-695. The statutory scheme comports with the requirements of due process, informing former property owners of their rights, instructing them as to how to express their intent to exercise such rights, and mandating that the FGU provide them surplus proceeds in accordance with MCL 211.78t. *Id.* at 697. This statutory scheme adequately protects citizens' constitutionally protected rights under the Takings Clause of either the federal or state constitution; and plaintiffs' failure to avail themselves of it constituted a forfeiture of such rights. *Id.* at 701-704.

This analysis applies equally here. The fact that plaintiffs' tax-delinquency foreclosure sales occurred prior to *Rafaeli* does not prevent this. Our Supreme Court made this clear in *Schafer*, 515 Mich 1, by holding, first, that *Rafaeli*'s holding applied retroactively, and also that the "detailed process for administration of claims filed for surplus proceeds" codified in MCL 211.78t applied retroactively as well. *Id.* at 43-45. In the words of our Supreme Court, "MCL 211.78t creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Id.* at 45. Moreover, the "statute asserts unambiguously that claims regarding sales occurring prior to *Rafaeli* 'must' comply with the statute, including certain notice requirements and procedures if *Rafaeli* is ever applied retroactively." *Id.* at 46. To facilitate retroactive application, the Supreme Court delineated a statute of limitations for claimants whose claims were "cut short by the retroactive application of 2020 PA 256" in that such claims "will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under applicable statutes of limitations on December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion." *Id.* at 49-50. There is no evidence in the record that any plaintiff was prevented from filing a notice of intention outside of this statutory limitations period; in fact, during oral argument, counsel represented that each plaintiff had filed a notice of intention and was pursuing their claims under MCL 211.78t.

Our Supreme Court subsequently affirmed this holding in *Schafer*, including the necessity of complying with the procedures in MCL 211.78t to recover surplus proceeds in cases such as this where the plaintiffs lost their property through a tax-foreclosure sale to the public. Specifically, in *Hathon*, ___ Mich at __; 17 NW3d at 686-687, our Supreme Court reversed a Court of Claims' decision that would have allowed former property owners who lost their property through tax-foreclosure sales at which the state served as the FGU to pursue their claims in the Court of Claims. Reiterating *Schafer*'s holding that MCL 211.78t "creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds," our Supreme Court held that this mechanism took precedence over the Court of Claims' exclusive jurisdiction over claims against the state of Michigan under MCL 211.78t. *Id.* at 686. "For a claimant to preserve their right to claim remaining proceeds under MCL 211.78t, they must initiate the statutory process by providing the [FGU] notice of their intent to seek remaining proceeds by March 31, 2025, using a form prescribed by the Department of Treasury."

*Id.* at 687. *Hathon* is binding authority. As a final order, it contained a concise statement of the applicable facts, as well as the reasons for our Supreme Court's decision. *Steele v Winfield*, 343 Mich App 394, 400; 997 NW2d 341 (2022). Accordingly, it is binding on this Court. *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016).

Additionally, in *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166320), slip op at 17, our Supreme Court reaffirmed *Hathon* and *Schafer,* recognizing that "[t]he plain language of MCL 211.78t is a clear manifestation of the Legislature's intent that the provision apply retroactively" to claims for surplus proceeds after a public foreclosure sale or after a transfer for fair market value under MCL 211.78t. *Jackson* involved a different provision of the GPTA, which did not involve MCL 211.78t but, rather, took effect when the "city purchases the property for the minimum bid under former MCL 211.78(l)." *Id.* And, because the provision evaluated in *Jackson* did not contain the language in MCL 211.78t calling for retroactive application, our Supreme Court distinguished *Jackson* from *Schafer* and *Hathon, Id.* at __; slip op at 19-20.

This distinction does not apply here. There is no allegation that any plaintiff's property was transferred to another governmental entity under MCL 211.78m. Accordingly, under Michigan law, MCL 211.78t provides the exclusive mechanism under which plaintiffs can seek remediation or vindication for their constitutionally protected property rights. Their allegation that the statute divests them of their property is without support in the statute and in caselaw interpreting it.

## 2. FEDERAL LAW REQUIRES A SIMILAR CONCLUSION

In interpreting Michigan law, federal courts have reached a similar conclusion. In 2025, the Sixth Circuit Court of Appeals held that a former property owner's failure to comply with the requirements of MCL 211.78t resulted in a forfeiture of her claim to such proceeds. *Howard v Macomb Co*, 133 F4th 566, 570-572 (CA 6 2025).

This case and the federal precedent cited therein refute any claim that MCL 211.78t impermissibly places conditions on a federal constitutional claim or attempts to preempt federal law, as plaintiffs suggest. To the contrary, recognizing that "[t]he power to tax ends, and the duty to account for a taking begins, when a State confiscates more property than it is owed," the Sixth Circuit acknowledged Michigan's past deficiency and found that Michigan established a procedure to "correct this problem" by "now giv[ing] owners a chance to recover any surplus." *Id.* at 569-570.

Seventy years ago, the United States Supreme Court recognized that "nothing in the Federal Constitution prevents" foreclosure of a property owner to recover delinquent taxes when the state had procedures to ensure notice and the opportunity to contest the foreclosure sale before it occurred. *Nelson v City of New York*, 352 US 103, 109-111; 77 S Ct 195; 1 L Ed 2d 171 (1956). Evaluating the procedures in MCL 211.78t, the Sixth Circuit in *Howard* recognized that, "*Nelson v City of New York*, shows that this kind of process complies with the Takings Clause." *Howard*, 133 F4th at 570. By providing former property owners with "the opportunity to recover [their] surplus and set[ting] several reasonable steps for claiming it," the procedures in MCL 211.78t prevent a taking from happening. *Id.* at 572. "A county that allows property owners to obtain any

surplus after a foreclosure and keeps the residual only if the owners do not seek it does not commit a taking" under federal law. *Id.* at 572.

Furthermore, the procedures of MCL 211.78t do not immunize government officials from releasing the taken property. That was the issue in *Williams*, 604 US 168, which involves a claim under 42 USC 1983 resulting from an allegedly unlawful delay in processing of unemployment benefits claims. In *Williams*, "[t]he claimants did not ask the court to rule that they were entitled to unemployment benefits, [but] [r]ather, they simply asked the court to order the Department to promptly address their benefits claims." *Id*. at 172-173. Dismissal of their complaint for failure to address the administrative requirements that were a dead end effectively immunized the state officials from the alleged constitutional claims. *Id*. at 174. This is not the situation here. MCL 211.78t provides timelines and procedures that, if a plaintiff chooses to engage, requires the FGU to pay the amounts due. Dismissal of plaintiffs' complaint because they failed to follow these procedures is not violative of federal or state law.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense